KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    v.<br><br>ENRIQUE AYON-CORTEZ,<br><br>              Defendant.<br><br>_____ | Criminal Case No. 08CR0283-IEG<br><br>Date: March 3, 2008<br>Time: 2:00 p.m.<br><br>The Honorable Irma E. Gonzalez<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO**<br><br>**1)    COMPEL DISCOVERY; AND**<br>**2)    GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions. This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On February 5, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Enrique Ayon-Cortez ("Defendant") with one count of being a deported alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b). On February 5, 2008, Defendant was arraigned on the Indictment and pled not guilty. On February 11, 2008, the Court continued the motion hearing and trial setting to March 3, 2008. On February 15, 2008, Defendant filed the above-captioned motions. The United States files the following response.

**II**

**STATEMENT OF FACTS**

**A.    OFFENSE CONDUCT**

On January 6, 2008, at approximately 11:50 a.m., Border Patrol Agents were conducting operations east along Highway 94, approximately five miles east and two miles north of the Tecate, California, Port of Entry. Agents observed an individual attempting to conceal himself in the brush along Highway 94. An agent approached the individual, identified himself as a Border Patrol Agent, and conducted a field interview regarding the individual's citizenship. The individual, later identified as "Enrique Ayon-Cortez," freely admitted to being a citizen and national of Mexico. Defendant also freely admitted that he did not possess documentation that would allow him to legally enter or remain in the United States. Defendant was arrested and transported to a border patrol station for processing.

A routine records check confirmed that Defendant is a citizen and national of Mexico, and that defendant subsequently was lawfully excluded, deported, and removed from the United States to Mexico on six prior occasions, and on four prior occasions, pursuant to an order issued by an immigration judge.

**B.    DEFENDANT'S IMMIGRATION HISTORY**

Defendant is a citizen and national of Mexico. Defendant has been lawfully excluded, deported and removed from the United States to Mexico on six prior occasions: (1) June 20, 1997; (2) July 14, 1997; (3) November 6, 1997; (4) August 25, 1999; (5) October 13, 2002; and (6) July 2, 2005. Defendant was ordered excluded, deported, and removed from the United States to Mexico pursuant to an order issued by an immigration judge on four prior occasions: (1) June 20, 1997; (2) July 14, 1997;

(3) November 6, 1997; and (4) June 29, 2005. After the last time Defendant was lawfully ordered excluded, deported, and removed from the United States, there is no evidence in the reports and records maintained by the Department of Homeland Security that Defendant applied to the U.S. Attorney General or the Secretary of the Department of Homeland Security to lawfully return to the United States.

### C. **DEFENDANT'S CRIMINAL HISTORY**

Defendant has an extensive criminal history involving immigration offenses committed in the Southern District of California. The United States, propounds that Defendant has eleven criminal history points placing him in Criminal History Category V. On February 17, 1998, Defendant pled guilty and was convicted of being a deported alien found in the United States, a felony, in violation of 8 U.S.C. § 1326, and received a sentence, from the Honorable Marilyn L. Huff, of 60 days in prison and 1 year of supervised release. [See Criminal Case No. 98CR0375-H.] On February 1, 1999, Defendant pled guilty and was convicted of being a deported alien found in the United States, a felony, in violation of 8 U.S.C. § 1326, and received a sentence, from the Honorable John S. Rhoades, of 6 months in prison and 2 years of supervised release. [See Criminal Case No. 98CR3220-R.] On February 23, 1999, Judge Huff revoked Defendant's supervised release and sentenced him to an additional term of 4 months in prison. On November 13, 2002, Defendant pled guilty and was convicted of making a false statement to a federal officer, a felony, in violation of 18 U.S.C. § 1001, and received a sentence, from the Honorable Irma E. Gonzalez, of 6 months in prison and 3 years of supervised release. [See Criminal Case No. 02CR1853-IEG.] On April 12, 2004, Judge Gonzalez revoked Defendant's supervised release and sentenced him to an additional term of 10 months in prison. On June 21, 2004, Defendant pled guilty and was convicted of making a false statement to a federal officer, a felony, in violation of 18 U.S.C. § 1001, and received a sentence, from Judge Huff, of 10 months in prison to run consecutive to the sentence ordered by Judge Gonzalez on November 13, 2002, followed by 3 years of supervised release. [See Criminal Case No. 04CR0253-H.] As a result of Defendant's illegal entry on January 6, 2008, Defendant is presently in violation of his term of supervised release in Criminal Case No. 04CR0253-H.

//

//

# III

## THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES

### A.     MOTIONS TO COMPEL DISCOVERY AND PRESERVE EVIDENCE

As of the date of this Motion, the United States has produced a total of 154 pages of discovery, 1 DVD-rom containing Defendant's post-arrest statements, and 1 tape containing an audio recording of Defendant's deportation hearing before an immigration judge on June 29, 2005. In addition, defense counsel reviewed Defendant's alien file ("A-File") at the U.S. Attorney's Office on February 22, 2008, and the United States produced additional discovery, which is included in the total amount above.

The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received **no** reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

### 1, 2.     Defendant's Statements And Arrest Reports

The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United States will supplement its discovery. The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover,

1  the United States will not produce rebuttal evidence in advance of trial. See <u>United States v. Givens</u>,
2  767 F.2d 574, 584 (9th Cir. 1984).

3  The United States also objects to Defendant's request for an order for production of any rough
4  notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary
5  because they are not "statements" within the meaning of the Jencks Act unless they contain a
6  substantially verbatim narrative of a witness' assertions <u>and</u> they have been approved or adopted by the
7  witness. <u>See</u> discussion <u>infra</u> Part III.A.12.; <u>see also</u> <u>United States v. Alvarez</u>, 86 F.3d 901, 906 (9th
8  Cir. 1996); <u>United States v. Bobadilla-Lopez</u>, 954 F.2d 519, 522 (9th Cir. 1992). The production of
9  agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided
10 defendant with copies of the formal interview reports prepared therefrom." <u>United States .v Griffin</u>, 659
11 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to
12 be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

13    **3. *Brady* Material**

14 The United States has complied and will continue to comply with its obligations under <u>Brady</u>
15 <u>v. Maryland</u>, 373 U.S. 83 (1963). Under <u>Brady</u> and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), the
16 government need <u>not</u> disclose "every bit of information that might affect the jury's decision." <u>United</u>
17 <u>States v. Gardner</u>, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. <u>Id</u>.
18 "Evidence is material under <u>Brady</u> only if there is a reasonable probability that the result of the
19 proceeding would have been different had it been disclosed to the defense." <u>United States v.</u>
20 <u>Antonakeas</u>, 255 F.3d 714, 725 (9th Cir. 2001).

21 The United States will also comply with its obligations to disclose exculpatory evidence under
22 <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Furthermore, impeachment evidence may constitute <u>Brady</u>
23 material "when the reliability of the witness may be determinative of a criminal defendant's guilt or
24 innocence." <u>United States v. Blanco</u>, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks
25 omitted). However, the United States will not produce rebuttal evidence in advance of trial. <u>See</u> <u>United</u>
26 <u>States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

27 //
28 //

#### 4.     **Any Information That May Result in a Lower Sentence**

Defendant claims that the United States must disclose information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is unwarranted.

#### 5.     **Defendant's Prior Record**

The United States has already provided Defendant with a copy of his criminal record and related court documents in accordance with Fed. R. Crim. P. 16(a)(1)(D). Any additional documents can be obtained by Defendant from the CM/ECF system, as Defendant received all of his prior convictions from the United States District Court for the Southern District of California, which are public records.

#### 6.     **Any Proposed 404(b) or 609 Evidence**

The United States has complied and will continue to comply with its obligations under Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid."). The United States has already provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general

1 nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will
2 supercede other rules of admissibility or disclosure[.]").

3       This is the United States' notice of intent to use Rule 404(b) evidence at trial. Specifically, the
4 United States intends to introduce evidence that Defendant has previously been convicted of Title 8,
5 United States Code, Section 1326 in the Southern District of California. In pleading guilty to this
6 offense, Defendant admitted that he was not a citizen of the United States, that he was previously
7 deported, and that he illegally reentered the United States. The United States will offer this evidence
8 as proof of Defendant's knowledge, intent, and absence of mistake that he is an alien who did not have
9 permission to reenter the United States.

10       As indicated above, Defendant has multiple immigration felony convictions that the United
11 States intends on cross-examining Defendant should he decide to testify. The United States intends to
12 use Defendant's prior felony convictions pursuant to Federal Rule of Evidence 609(a) to impeach his
13 testimony should he take the stand to testify. Section I.C. above contains all of the felony convictions
14 that the United States intends to use at trial. Copies of the conviction documents regarding this offense
15 have already been provided in discovery. In addition to the criminal convictions, the United States
16 intends to offer your client's prior deportations from the United States, as mentioned in Section I.B.
17 above, as direct and circumstantial evidence of his prior deportation, alienage, and the requisite mental
18 state for this offense.

19       **7, 9.**    **Evidence Seized and Tangible Objects**

20       The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E)
21 in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all
22 evidence seized and/or tangible objects that are within the possession, custody, or control of the United
23 States, and that are either material to the preparation of Defendant's defense, or are intended for use by
24 the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.
25       The United States need not, however, produce rebuttal evidence in advance of trial. See United
26 States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).
27 //
28 //

### 8.  Request for Preservation of Evidence/*Henthorn*/Personnel Files

The United States will preserve all evidence pursuant to an order issued by this Court. The United States objects to an overbroad request to preserve all physical evidence.

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

Defendant's request that the specific prosecutor in this case review the personnel files is unwarranted and unnecessary. Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30- 31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor personally review the personnel files.

### 10.  Expert Witnesses

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

### 11, 12, 14, 16, 19.  Evidence of Bias or Motive to Lie / Impeachment Evidence/ Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling / *Giglio* Material

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her testimony. The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

### 13. Evidence of Criminal Investigation of Any United States' Witness

The United States objects to Defendant's overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

//
//
//

**15.    Jencks Act Material**

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

**17, 18.    Agreements/Informants and Cooperating Witnesses/ Names & Addresses**

The United States objects to Defendant's request for witness addresses. None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call. Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States is not aware of any individuals who were witnesses to Defendant's offense except the law enforcement agentes who apprehended him. The names of these individuals have already been provided to Defendant.

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

That said, the United States is unaware of the existence of an informant or any cooperating witnesses in this case. The United States is also unaware of any agreements between the United States and potential witnesses. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986).

### 20. Inspection and Copying of A-File

As previously mentioned above, defense counsel reviewed Defendant's A-File at the U.S. Attorney's Office on February 22, 2008, and the United States produced an additional 68 pages of discovery. As such, this discovery request is moot.

### 21. Residual Request

As already indicated, the United States will comply with its discovery obligations in a timely manner.

### B.    LEAVE TO FILE FURTHER MOTIONS

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

//

## IV

## **CONCLUSION**

For the foregoing reasons, the United States requests the Court deny Defendant's Motions to Compel Discovery, Preserve Evidence and Leave to File Further Motions, unless unopposed.

DATED: February 25, 2008

                                      Respectfully submitted,

                                      KAREN P. HEWITT
                                      United States Attorney

                                      /s/ *Joseph J.M. Orabona*
                                      JOSEPH J.M. ORABONA
                                      Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | Criminal Case No. 08CR0283-IEG |
| )   Plaintiff,      ) | |
| )                                                   ) | **CERTIFICATE OF SERVICE** |
| v.                                                  ) | |
| )                                                   ) | |
| ENRIQUE AYON-CORTZ,             ) | |
| )                                                   ) | |
| Defendant.    ) | |
| ─────────────────────────) | |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE, AND GRANT LEAVE TO FILE FURTHER MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

> Sara M. Peloquin, Esq.
> Federal Defenders of San Diego, Inc.
> 225 Broadway, Suite 900
> San Diego, California 92101-5008
> *Lead Attorneys for Defendant*

A hard copy is being sent to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 25, 2008

/s/ **Joseph J.M. Orabona**
JOSEPH J.M. ORABONA
Assistant United States Attorney

08CR0283-IEG