**SARA M. PELOQUIN**
California State Bar No. 254945
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Email: sara_peloquin@fd.org

Attorneys for Mr. Ayon-Cortez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE IRMA E. GONZALEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08CR0283-IEG |
| Plaintiff, | DATE: July 14, 2008 |
| | TIME: 2:00 p.m. |
| v. | |
| **ENRIQUE AYON-CORTEZ,** | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF |
| Defendant. | DEFENDANT'S MOTIONS *IN LIMINE* |

**I.**

**STATEMENT OF FACTS**

Mr. Ayon-Cortez is charged with being a deported alien found in the United States in violation of Title 8, United States Code § 1326. Mr. Ayon-Cortez hereby incorporates the statement of facts from the memorandum of points and authorities in support of his previous motions.

**II.**

**THE GOVERNMENT MUST BE PRECLUDED FROM USING DEPORTATION DOCUMENTS AT TRIAL**

**A.   The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish the Fact of the Deportation, *Not* Alienage**

Mr. Ayon-Cortez expects that the government will seek to introduce a warrant of deportation and an order of deportation to establish the fact of his deportation. These two documents are admissible *only* to establish the fact of the deportation. See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir.

1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980). Neither the warrant of deportation nor the order of deportation reflect the "objective, ministerial fact" of alienage; accordingly, neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage.

Both the warrant of deportation and the order of deportation reflect the ministerial fact of the *deportation*, not Mr. Ayon-Cortez' alleged alienage. As the Ninth Circuit has explained:

> **Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.** The use of a deportation order to prove the element of alienage would allow the government to skirt around the more stringent requirements of a criminal proceeding by relying on that factual finding from the INS proceeding. To put it more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added). Simply put, alienage is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing, and the order of deportation reflects the quintessential "factual finding" rendered after an administrative hearing. Likewise, the warrant of deportation reflects only that an immigration judge found Mr. Ayon-Cortez to be an alien after an administrative hearing, and that Mr. Ayon-Cortez may have been removed from the United States after that deportation—it has no bearing whatsoever on the fact of alienage. Accordingly, the warrant of deportation and order of deportation are not admissible under Federal Rule of Evidence 803(8) or Federal Rule of Evidence 401 to establish the fact of alienage.[1]

Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because

---

[1] In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001), the Ninth Circuit stated summarily that A-file documents are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage. Because the court failed to set forth any reasoned discussion, failed to discuss the decision in Medina, and did not specify which documents from the A-file were admitted in Mr. Hernandez-Herrera's case, see id., this case is not binding authority, and this Court must still address this issue. See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned analysis and analogous facts"). In any event, Hernandez-Herrera never held that these documents were admissible under Federal Rules of Evidence 401 or 403 or the Fifth and Sixth Amendments. See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent").

their probative value is substantially outweighed by their prejudicial effect. Both the order of deportation and warrant of deportation make reference to an "alien;" even more troubling, in the context of these documents, the term "alien" is associated *with* Mr. Ayon-Cortez, who presumably is the "alien" to which the documents refer. In the face of these quasi-official government documents proclaiming Mr. Ayon-Cortez to be an "alien," there is a real danger that jurors will no longer see the alienage element of 8 U.S.C. § 1326 as an open question that the government must prove beyond a reasonable doubt.

Should the Court nonetheless admit these documents, Mr. Ayon-Cortez requests that this Court instruct the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of deportation and the order of deportation to establish the fact of the deportation and for no other purpose, and that these documents do not, in and of themselves, establish the fact of alienage. Mr. Ayon-Cortez further requests that this Court redact these documents to exclude any reference to his alleged alienage.

**B.    None of the Other A-File Documents Are Admissible Under Any Rule of Evidence.**

Mr. Ayon-Cortez anticipates that the government may seek to admit other documents from the A-file, including the order to show cause why a person should not be deported and warnings regarding the possible penalties for reentry. None of these documents from the A-file are admissible to establish any matter at issue in this trial. All documents from the A-file—except the warrant of deportation and the order of deportation discussed previously—are irrelevant under Federal Rule of Evidence 401; more prejudicial than probative, cumulative, and a waste of time under Federal Rule of Evidence 403; and inadmissible hearsay under Federal Rule of Evidence 803(8).

1.    The Notice to Appear Is Inadmissible.

The Notice to Appear is inadmissible under Federal Rules of Evidence 401, 403, and 803(8). The Notice to Appear is a document that provides an alien with *notice* of the grounds for removal. It does not record the "objective, ministerial fact" of alienage or of a deportation any more than an indictment provides an objective observation that a person committed a crime. This document is nothing more than an *accusation* that the government must prove in an immigration proceeding.

2.    The Warnings of Possible Penalties Is Inadmissible.

Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401, 403, and 803(8). The warning of possible penalties contains boilerplate statements (drafted by the former

INS) regarding the penal consequences to an alien who illegally reenters the country. It has no bearing on whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This document contains inadmissible hearsay, and is completely irrelevant. It is also more prejudicial than probative. Among other things, given the serious consequences listed on the warning of possible penalties, jurors may be led to speculate what this defendant did to be subject to such harsh penalties upon reentry; needless to say, such speculation is completely irrelevant to the charge at hand and could be severely prejudicial. Accordingly, the warnings of possible penalties also must be excluded at trial.

3. <u>If this Court Finds That These Documents Are Somehow Relevant,  They Are Not Admissible to Establish Alienage; Thus, This Court Should Order the Documents Redacted and Provide the Jury With a Limiting Instruction</u>.

To the extent that this Court finds any A-file document relevant to some point, the document is not admissible to establish Mr. Ayon-Cortez's alienage. Accordingly, this Court should redact these documents to exclude all references to alienage as well as any other prejudicial information such as prior convictions. Additionally, the Court should instruct the jury as to the limited value of such documents pursuant to Federal Rule of Evidence 105.

**C.    This Court Must Preclude the Admission of the A-file Documents to Establish Alienage to Protect Mr. Ayon-Cortez's Constitutional Rights.**

Finally, this Court must preclude the admission of A-file documents to establish the fact of alienage to protect Mr. Ayon-Cortez's rights to confrontation of witnesses and to a jury trial based upon proof beyond a reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments. Because the right to confrontation is not applicable in immigration proceedings, the government may have met its burden of proving alienage in such a proceeding based upon otherwise inadmissible hearsay. <u>Cunanan v. INS</u>, 856 F.2d 1373, 1374 (9th Cir. 1988). Similarly, because a criminal defendant such as Mr. Ayon-Cortez never has the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may have relied, the admission of the (former) INS' evaluation of alienage deprives a defendant of his right to confront the witnesses against him.

Additionally, in immigration proceedings, the government need only establish alienage by clear and convincing evidence. <u>Murphy v. INS</u>, 54 F.3d 605, 608-610 (9th Cir. 1995). Once the government has established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance

of the evidence, that he falls within one of the statutory provisions for derivative citizenship. Id. Given the lower burden of proof and the shifting presumption, the admission of A-file documents against a criminal defendant to establish the fact of alienage has the effect of lowering the government's burden of proving alienage in the criminal trial.

Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue weight or conclusive effect. Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'"); Federal Rules of Evidence 803(22), Advisory Committee Note (observing that "it seems safe to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory explanation"). The government's introduction of a government agency's finding of alienage to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval. The admission of this factual finding undermines a defendant's constitutional right to a reliable jury finding of an essential element.

In sum, because the A-file documents are generated by the government without the constitutional safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to authorize their admission, as evidence of alienage, in a criminal prosecution. This Court should exclude these documents in their entirety; or, to the extent the Court finds that these documents are admissible to prove some other fact, it should redact these documents to exclude reference to Mr. Ayon-Cortez's alienage and instruct the jury as to the documents' limited relevance.

**D. The Certificate of Nonexistence of Record Is Inadmissible Because it Violates the Confrontation Clause of the U.S. Constitution and Allows the Government to Circumvent its Discovery Obligations.**

Mr. Ayon-Cortez has not received notice that the government intends to introduce a Certificate of Nonexistence of Record (hereinafter "CNER"). Therefore, Mr. Ayon-Cortez assumes that the government will not attempt to use such a document. Nonetheless, this document is inadmissible because it violates the Confrontation Clause. U.S. Const. Amend VI; Crawford v. Washington, 541 U.S. 36 (2004) (holding that admission of testimonial statements of a witness who does not appear at trial and who the defendant did not

have a prior opportunity to cross-examine violates the confrontation clause of the Sixth Amendment).  But see United States v. Cervantes-Flores, 421 F.3d 825 (9th Cir. 2005) (holding that CNER is non-testimonial).  If the government changes its position on this issue, Mr. Ayon-Cortez requests the opportunity to submit further briefing on this issue.

### III.

### THIS COURT SHOULD PROHIBIT ANY EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(b) AND 609 BECAUSE THE GOVERNMENT HAS FAILED TO PROVIDE ADEQUATE NOTICE OF OTHER CRIMES, WRONGS, OR ACTS

**A.      Exclusion of Other Acts Evidence Under Rules 404(b) and 403.**

Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce.  Fed. R. Evid. 404(b).  Notice is a condition precedent to admission of other acts evidence. Fed. R. Evid 404(b), 1991 Advisory Committee Notes.  Timely notice of such evidence is also critical so that Mr. Ayon-Cortez may adequately prepare his defense.  Because the Government has failed to provide adequate notice of other crimes, wrongs, or acts allegedly committed by Mr. Ayon-Cortez that it plans to introduce at trial, this Court should exclude any evidence the Government will seek to introduce under Rule 404(b).

In its in limine motions, the government seeks the introduction under Federal Rule of Evidence 609 of Mr. Ayon-Cortez' prior convictions for illegal re-entry and false statements.  See Gov't Motions at 14.  In a letter dated July 2, 2008, the government expressed its intent to introduce Mr. Ayon-Cortez's prior convictions as 404(b) and 609 evidence.

The government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; therefore, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993).  Because the government has failed to provide notice of the precise evidential hypothesis by which this evidence will be admitted, this evidence must be excluded under Federal Rules of Evidence 401, 404(b) and 403.

//

//

1   **B.      <u>Exclusion of Prior Convictions to Impeach Witness Under Rule 609.</u>**

2   Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior
3   conviction to only those offenses for which the court determines that the probative value outweighs its
4   prejudicial effect to the accused.   The government should be precluded from introducing any evidence of
5   Mr. Ayon-Cortez's prior convictions, as they are irrelevant under Federal Rule of Evidence 401, prejudicial
6   under Federal Rule of Evidence 403 and old.  <u>See</u> Fed. R. Evid. 609(b).  Even if Mr. Ayon-Cortez were to
7   testify at trial, the danger of unfair prejudice would substantially outweigh any possible relevance of his prior
8   offense.  Fed. R. Ev. 401, 403, 609.

9   Rule 609 limits the admissibility of prior convictions to ten years.  Thus, convictions are not
10  admissible under Rule 609 "if a period of more than ten years has elapsed since the date of the conviction
11  or of the release of the witness from confinement imposed for that conviction."  The government seeks to
12  introduce evidence of Mr. Ayon-Cortez' previous convictions under 404(b) and 609.

13  Mr. Ayon-Cortez' February 1998 conviction for illegal re-entry is inadmissible under 404(b) as the
14  government has not articulated any theory by which this conviction evinces motive, opportunity, plan,
15  knowledge, identity, or, absence of mistake or accident.  The government has not proffered what facts
16  surrounding this conviction show any of the narrow exceptions to 404(b).  The 1999 conviction for illegal
17  re-entry is inadmissible under 404(b) for the same reasons. The 1998 re-entry conviction is also inadmissible
18  under Fed. R. Evid. 609 as it is more than ten years old.  Both illegal re-entry convictions should be excluded
19  because they fail to meet the balancing test set out under 403.  There is a great danger that a jury would
20  consider these past convictions as character evidence showing conformity because the charges in the past
21  were the same as the present charge.

22  Mr. Ayon-Cortez' prior convictions for false statements are not admissible under 404(b) either.
23  Furthermore, evidence of prior convictions for false statements are completely irrelevant to elements the
24  government must prove to sustain a conviction for illegal re-entry.  Again, the government has failed to
25  articulate any theory by which these convictions falls under one of the exceptions carved out by the rule.

26  To the extent that this Court rules that any of Mr. Ayon-Cortez's prior convictions are admissible
27  under Federal Rule of Evidence 609, this Court should redact any documents referencing, and preclude the
28  prosecutor from referring to, the offense and specific facts of any crime for which Mr. Ayon-Cortez was

1  convicted. Such information would be more prejudicial than probative of Mr. Ayon-Cortez's guilt of the
2  charged offense.

**IV.**

**THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE**

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Ayon-Cortez right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

**V.**

**THIS COURT SHOULD PROHIBIT THE WITNESSES FROM REFERRING TO MR. AYON-CORTEZ AS "THE ALIEN"**

To convict Mr. Ayon-Cortez, the government must prove that he is an "alien." See 8 U.S.C. § 1326. "Alien" is a legal term that must be defined by this Court. See Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994) (responsibility of court, not testifying witnesses, to define legal terms); Fed. R. Evid. 704(a). It is also a finding that the jury must make; thus, no witness is permitted to opine that this element has been proved. See United States v. Espino, 32 F.3d 253, 257 (7th Cir. 1994) (question whether the defendant was "admitting the conspiracy" was improper because it required a legal conclusion).

The government likely will call several witnesses from the Department of Homeland Security (DHS), specifically, the A-file custodian, border patrol agents, and detention enforcement officers. Because the DHS has accused Mr. Ayon-Cortez of being an alien, it is anticipated that these witnesses will refer to Mr. Ayon-Cortez as "the alien." If these witnesses testify that Mr. Ayon-Cortez is an alien, it will create confusion among the jurors regarding this Court's instructions on the law and what the government has—or has not—proved, in violation of Federal Rule of Evidence 403. It will also subvert Mr. Ayon-Cortez's right to a jury finding of every essential element—a right guaranteed by the Fifth and Sixth Amendments. Accordingly, this Court should preclude the witnesses from referring to Mr. Ayon-Cortez as "the alien."

**VI.**

**THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS**

The Court should order production of grand jury transcripts if a witness who likely will testify at the trial of Mr. Ayon-Cortez also is likely to have testified before the grand jury. Dennis v. United States,

384 U.S. 855 (1966); Fed. R. Crim. R. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for recess in the proceedings for defense counsel to examine the statements pursuant to Federal Rule of Criminal Procedure 26.2(d).

## VII.

## THIS COURT SHOULD SUPPRESS THE DEPORTATION HEARING AUDIOTAPE OR TRANSCRIPT.

The Court must exclude any deportation hearing audiotape or transcript because they would contain un-Mirandized statements made by Mr. Ayon-Cortez in response to custodial interrogation. Questions asked in a custodial setting constitute interrogation if, under all the circumstances, the questions are "reasonably likely to elicit an incriminating response from the suspect." United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1982)(citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). In Mathis v. United States, 391 U.S. 1 (1968), the Supreme Court held that the defendant's statements to a revenue agent who was conducting a routine tax investigation were the product of custodial interrogation within the meaning of Miranda despite the fact that the agent's questioning was part of the routine tax investigation where no criminal proceedings could have even been brought and the defendant was in jail on an entirely separate offense. Id. at 4. The Court stated that "[t]hese differences are too minor and shadowy to justify a departure from the well-considered conclusions of Miranda with reference to warnings to be given to a person held in custody." Id.

In the immigration context, this Court has stated: "[i]f civil investigations by the INS were excluded from the Miranda rule, INS agents could evade that rule by labeling all investigations as civil. Civil as well as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied by the Miranda warnings." United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983). In Mata-Abundiz, an INS investigator interviewed the defendant at a local jail, where he was being held on state charges, as part of a routine civil investigation without a prior Miranda advisement. In a subsequent federal prosecution for possession of a firearm by an alien, the district court permitted the government to introduce the defendant's statement to the INS investigator concerning his Mexican citizenship. This Court reversed the defendant's conviction recognizing that "the investigator cannot control the constitutional question by placing a 'civil' label on the investigation." Id. at 1280.

1    Moreover, the Ninth Circuit in <u>Mata-Abundiz</u> rejected the government's argument that the
2 questioning fell within the exception to the <u>Miranda</u> requirements for routine background questioning
3 attendant to arrest and booking. <u>See</u> <u>United States v. Booth</u>, 669 F.2d at 1237-38. In <u>Booth</u>, the court of
4 appeals stated: "Ordinarily, the routine gathering of background, biographical data will not constitute
5 interrogation. Yet we recognize the potential for abuse by law enforcement officers who might, under the
6 guise of seeking 'objective' or 'neutral' information, deliberately elicit an incriminating statement from a
7 suspect." <u>Booth</u>, 669 F.2d at 1238. The Court applied this objective test to <u>Mata-Abundiz</u> and found that
8 the "background questions" related directly to an element of the offense to which the defendant was
9 suspected and the questions were likely to elicit an incriminating response. <u>Mata-Abundiz</u>, 717 F.2d at 1280.

10    Like the questioning in <u>Mathis</u> and <u>Mata-Abundiz</u>, the questioning by the immigration judge in this
11 case was "reasonably likely to elicit an incriminating response" within the meaning of <u>Booth</u>. All of
12 Mr. Ayon-Cortez' statements were made in response to direct questioning by government officials. The
13 questioning concerned Mr. Ayon-Cortez' place of birth, citizenship, and manner of entry into the United
14 States. Federal law provides for criminal penalties to aliens who illegally enter the United States, <u>see</u> 8
15 U.S.C. §1325, and to aliens who illegally reenter the United States following deportation, <u>see</u> 8 U.S.C. §
16 1326.

17    In <u>United States v. Solano-Godines</u>, 120 F.3d 957, 961 (9th Cir. 1997), the government brought
18 criminal charges against the defendant, Mr. Ayon-Cortez for illegal reentry after a deportation. <u>Id.</u> at 959.
19 Two years before, Mr. Solano appeared at a civil deportation hearing at which he made statements about his
20 place of birth and citizenship. <u>Id.</u> Mr. Solna was not given <u>Miranda</u> warnings prior to making these
21 statements. <u>Id.</u> Prior to trial, Mr. Solona filed a motion to suppress the statements at his deportation hearing.
22 <u>Id</u>. at 960. The district court denied the motion and Mr. Solano entered a conditional plea agreement. <u>Id.</u>
23 On appeal, the Ninth Circuit held that <u>Miranda</u> warnings were not required in that case because the
24 immigration judge "could not be expected to anticipate that two years later Mr. Solona would illegally
25 reenter the United States and that his responses to questions at his civil deportation hearing might
26 incriminate him in a prosecution for this future crime." <u>Id.</u> at 962.

27    The Ninth Circuit's holding and reasoning in <u>Solano-Godines</u> is inapplicable to this case. In
28 particular, the Notice to Appear charged Mr. Ayon-Cortez with entering without inspection. Therefore, Mr.

Ayon-Cortez's responses to the immigration judge's questioning should be excluded because his responses could have subjected him to criminal prosecution at that time, not some unknown time in the future. For that reason, the immigration judge should have advised him of his rights under <u>Miranda</u>. Because Mr. Ayon-Cortez's admission were made without the benefit of <u>Miranda</u> warnings his statements at the deportation hearing must be excluded. <u>See</u> <u>United States v. Alderete-Deras</u>, 743 F.2d 645, 648 (9th Cir. 1984) (noting that the lack of <u>Miranda</u> warnings at a civil deportation hearing might render statements made at the hearing inadmissible in a subsequent criminal trial).

## VIII.

## **THIS COURT SHOULD PRECLUDE EXPERT TESTIMONY**

**A.  All Expert Witnesses Offered Without Requisite Notice to Defendant Violate Federal Rule of Criminal Procedure 16(a)(1)(E) and must Be Excluded.**

Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . . The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing, continuing prior to and during trial. Fed. R. Crim. P. 16(c). When a party fails to comply with the discovery rules set forth in Rule 16, exclusion is a proper remedy. Fed. R. Crim. P. 16(d)(2). <u>See</u> also Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in 1993, the defense is *entitled* to disclosure of certain information about expert witnesses which the government intends to call during the trial" (emphasis provided.). Mr. Ayon-Cortez previously filed a Motion to Compel Discovery/Preserve Evidence, which requested that the government disclose its expert witnesses per Rule 16. The government has provided a letter evincing its intent to offer the expert testimony of Lisa Di Meo and Shaun Braud; however, neither their qualifications, opinions, or information forming the foundation of these opinion have been disclosed. Mr. Ayon-Cortez respectfully requests that this Court grant this motion *in limine* to give effect to the discovery requirements of Rule 16, and to afford the accused the opportunity to prepare his defense in this case.

1  **B.     To the Extent this Court Permits the Government to Introduce Expert Testimony, a *Daubert*
2            Hearing is Required.**

3           If this Court determines that the government may introduce expert testimony, Mr. Ayon-Cortez is
4  entitled to a hearing to determine the expert's qualifications and the relevancy of the expert's proposed
5  testimony. See Fed R. Ev. 702, Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999); Daubert v.
6  Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Mr. Ayon-Cortez specifically requests such a
7  hearing should the government introduce testimony regarding fingerprint analysis—for example, testimony
8  regarding the relationship between fingerprints taken from Mr. Ayon-Cortez and those allegedly found on
9  documents in Mr. Ayon-Cortez's A-file.

10          "Faced with a proffer of expert scientific testimony, . . . the trial judge must determine at the outset,
11 pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will
12 assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of
13 whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that
14 reasoning or methodology properly can be applied to the facts in issue . . . ." Id. at 592-93. Mr. Ayon-
15 Cortez requests that the Court make this determination after a pre-trial hearing held outside the presence of
16 the jury, during which Mr. Ayon-Cortez can test the proffered testimony's foundation and relevance.

17                                                          **IX.**

18          **THE GOVERNMENT MUST BE PRECLUDED FROM INTRODUCING EVIDENCE OF A
                                    REINSTATEMENT OF DEPORTATION**
19

20          The Ninth Circuit, sitting en banc, recently decided Morales-Izquierdo v. Gonzales, 486 F.3d 484
21 (9th Cir. 2007) (en banc). Morales-Izquierdo reasoned "that reinstatement and removal are placed in
22 different sections, which logically can be understood as indicating a congressional intention to treat
23 reinstatement determinations differently from first-instance determinations of removability." See Morales-
24 Izquierdo, 486 F.3d at 490. (quotation marks omitted). Because "Congress placed reinstatement in a
25 separate section from removal suggests that reinstatement is a separate procedure, not a species of removal."
26 Id. The en banc panel concluded that "Congress intended reinstatement to be a different and far more
27 summary procedure than removal." Id. at 491; see also United States v. Luna-Madellaga, 315 F.3d 1224,
28 1231 (9th Cir. 2003)(Thomas, J., dissenting) (stating that the "reinstatement process neither issues an order

of removal nor considers new evidence that occurred after the date of the original order."). Put simply, Morales-Izquierdo held "Congress did not consider removal and reinstatement to be equivalent." Id. In fact, Morales-Izquierdo specifically rejected the notion that a reinstatement can result in new criminal penalties: "[t]he reinstatement order imposes no civil or criminal penalties." 486 F.3d at 498. See also Luna-Madellaga, 315 F.3d at 1231-32 (Thomas, J., dissenting) (explaining why a contrary result would be constitutionally doubtful). Therefore, the government should not be permitted to admit evidence of any reinstatements.

## X.

## THIS COURT SHOULD ALLOW MR. AYON-CORTEZ LEAVE TO FILE FURTHER MOTIONS

Mr. Ayon-Cortez requests leave to file further motions as may be necessary.

## XI.

## CONCLUSION

For the foregoing reasons, and for such other reasons as may appear at the hearing on these motions, Mr. Ayon-Cortez respectfully requests that the Court grant his motions, and accord such other relief as this Court deems just.

Respectfully submitted,

Dated: July 8, 2008

 */s/ Sara M. Peloquin*
**SARA M. PELOQUIN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Ayon-Cortez