KAREN P. HEWITT
United States Attorney
STEWART M. YOUNG
Assistant U.S. Attorney
California State Bar No. 234889
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6228
Email: stewart.young@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ENRIQUE AYON-CORTEZ, <br><br> Defendant. | Criminal Case No. 08-CR-283 IEG <br><br> GOVERNMENT'S TRIAL MEMORANDUM <br><br> Date: July 22, 2008 <br> Time: 9:00 a.m. <br> Honorable: Chief Judge Irma E. Gonzalez |

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Stewart M. Young, Assistant United States Attorney, and respectfully submits the following Trial Memorandum.

**I**

**STATEMENT OF THE CASE**

**A.  INDICTMENT**

The Defendant, Enrique Ayon-Cortez (hereinafter "Defendant"), was charged by a grand jury on February 5, 2008 with violating Title 8 U.S.C. 1326(a) and (b). On that same day, Defendant was arraigned on the Indictment and entered a plea of not guilty.

**B.  TRIAL STATUS**

Trial is scheduled for Tuesday, July 22, 2008, at 9:00 a.m. before the Honorable Chief Judge Irma E. Gonzalez. The United States anticipates that its case-in-chief will last one day.

**C.     STATUS OF COUNSEL**

Defendant is represented by Sara Peloquin, Federal Defenders of San Diego, Inc.

**D.     CUSTODY STATUS**

Defendant is in custody.

**E.     INTERPRETER**

The United States does not need an interpreter for any of its witnesses. The United States anticipates that Defendant may need an interpreter.

**F.     JURY WAIVER**

Defendant has not waived trial by jury.

**G.     PRETRIAL MOTIONS**

On March 3, 2008, the Court granted the United States' motions for fingerprint exemplars and reciprocal discovery. In addition, the Court granted Defendant's request to continue the motion hearing and trial setting to April 7, 2008. On March 25, 2008, Defendant filed motions to dismiss the indictment, suppress statements and leave to file further motions. On May 29, 2008, following an evidentiary hearing, the Court denied defendant's motion to dismiss the indictment and granted in part and denied in part defendant's motion to dismiss statements.

On July 2, 2008, the United States filed its motions *in limine*. These *in limine* motions included: Exclude All Witnesses Except Case Agent, Exclude Evidence Why Defendant Re-Entered the United States, Exclude Evidence Regarding Prior Residency, Admit A-File Documents, Prohibit Reference to Punishment, Preclude Argument Regarding Warning, Prohibit Argument Regarding Duress and Necessity, Prohibit Collateral Attack of Prior Deportation, Admit Redacted Certified Transcript, and Admit 609 Evidence.

On July 8, 2008, defendant filed his motions *in limine*. A hearing on the motions *in limine* occurred on July 14, 2008, at 2 p.m. At that hearing, the Court granted the Government's motions to admit documents from the A-File, to admit redacted certified transcript of previous plea colloquy, to prohibit collateral attack of deportation; granted in part and denied in part Government's motions to admit evidence under Rule 609, to exclude evidence or reference to punishment, to exclude character witnesses; and found as moot or continued Government's motions to preclude evidence

of duress or necessity, to prohibit evidence about re-entry or prior residence. The Court granted defendant's motions to exclude certain deportation documents (including the Notice to Appear), to allow attorney voir dire, to prohibit witnesses from referring to defendant as "the alien:" granted in part and denied in part motion the to prohibit evidence under Rule 404(b) and 609; denied the motion to preclude expert testimony, and found as moot the motions to preclude evidence of reinstatements, to produce grand jury transcripts, and to suppress the deportation audiotape or transcripts.

### H. STIPULATIONS

There are no stipulations between the parties as of this date. It is anticipated that a stipulation regarding defendant's admissions in his 1998 case may be agreed upon by the parties.

### I. DISCOVERY

The United States has complied with its discovery obligations. Defendant has not provided any reciprocal discovery.

## II

## STATEMENT OF THE FACTS

### A. OFFENSE CONDUCT

On January 6, 2008, at approximately 11:50 a.m., Border Patrol Agents were conducting operations east along Highway 94, approximately five miles east and two miles north of the Tecate, California, Port of Entry. Agents observed an individual attempting to conceal himself in the brush along Highway 94. An agent approached the individual, identified himself as a Border Patrol Agent, and conducted a field interview regarding the individual's citizenship. The individual, later identified as "Enrique Ayon-Cortez," freely admitted to being a citizen and national of Mexico. Defendant was arrested and transported to a border patrol station for processing.

A routine records check confirmed that Defendant was a citizen and national of Mexico, and that defendant was lawfully excluded, deported, and removed from the United States to Mexico on six occasions, including four prior occasions pursuant to an order issued by an immigration judge.

### B.     DEFENDANT'S IMMIGRATION HISTORY

Defendant is a citizen and national of Mexico. Defendant has been lawfully excluded, deported and removed from the United States to Mexico on six prior occasions: (1) June 20, 1997; (2) July 14, 1997; (3) November 6, 1997; (4) August 25, 1999; (5) October 13, 2002; and (6) July 2, 2005. Defendant was ordered excluded, deported, and removed from the United States to Mexico pursuant to an order issued by an immigration judge on four prior occasions: (1) June 20, 1997; (2) July 14, 1997; (3) November 6, 1997; and (4) June 29, 2005. After the last time Defendant was lawfully ordered excluded, deported, and removed from the United States, there is no evidence in the reports and records maintained by the Department of Homeland Security that Defendant applied to the U.S. Attorney General or the Secretary of the Department of Homeland Security to lawfully return to the United States.

### C.     DEFENDANT'S CRIMINAL HISTORY

Defendant has an extensive criminal history involving immigration offenses committed in the Southern District of California. The United States submits that Defendant has at least eleven criminal history points, placing him in a likely Criminal History Category V.

On February 17, 1998, Defendant pled guilty and was convicted of being a deported alien found in the United States, a felony, in violation of 8 U.S.C. § 1326, and received a sentence, from the Honorable Marilyn L. Huff, of 60 days in prison and 1 year of supervised release. [See Criminal Case No. 98CR0375-H.]

On February 1, 1999, Defendant pled guilty and was convicted of being a deported alien found in the United States, a felony, in violation of 8 U.S.C. § 1326, and received a sentence, from the Honorable John S. Rhoades, of 6 months in prison and 2 years of supervised release. [See Criminal Case No. 98CR3220-R.] On February 23, 1999, Judge Huff revoked Defendant's supervised release and sentenced him to an additional term of 4 months in prison.

On November 13, 2002, Defendant pled guilty and was convicted of making a false statement to a federal officer, a felony, in violation of 18 U.S.C. § 1001, and received a sentence, from the Honorable Irma E. Gonzalez, of 6 months in prison and 3 years of supervised release. [See Criminal

Case No. 02CR1853-IEG.] On April 12, 2004, Judge Gonzalez revoked Defendant's supervised release and sentenced him to an additional term of 10 months in prison.

On June 21, 2004, Defendant pled guilty and was convicted of making a false statement to a federal officer, a felony, in violation of 18 U.S.C. § 1001, and received a sentence, from Judge Huff, of 10 months in prison to run consecutive to the sentence ordered by Judge Gonzalez on November 13, 2002, followed by 3 years of supervised release. [See Criminal Case No. 04CR0253-H.] As a result of Defendant's illegal entry on January 6, 2008, Defendant is presently in violation of his term of supervised release in Criminal Case No. 04CR0253-H.

## III

## PERTINENT LAW

**A.    8 U.S.C. § 1326, DEPORTED ALIEN FOUND IN THE UNITED STATES**

The defendant is charged with being an alien who, after deportation, was found in the United States in violation of Section 1326(a) of Title 8 of the United States Code. In order for Defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

1.    Defendant was deported from the United States;

2.    After deportation, Defendant voluntarily entered the United States;

3.    When Defendant entered he knew he was entering the United States or after the defendant entered the United States he knew that he was in the United States and knowingly remained;

4.    Defendant was found in the United States without having obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and

5.    Defendant was an alien at the time of the defendant's entry into the United States.
See 9th Cir. Model Crim. Jury Instructions 9.5B (2007); see also United States v. Salazar-Gonzalez, 458 F.3d 851, 856 (9th Cir. 2006).[1]

---

[1]    The Government will request a special verdict form indicating that the Defendant was removed subsequent to June 21, 2004. See United States v. Jose Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006).

**C.     ALIENAGE**

The Ninth Circuit has held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule." See United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of deportation documents to prove alienage). The Ninth Circuit has also made clear the type of deportation documents that may be used as evidence of alienage:

> Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior deportation order, admissions Ramirez-Cortez made in his underlying deportation proceeding, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien. Cf. United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior deportation order, the defendant's admissions to an INS agent that he was a Mexican citizen, and his admissions during the deportation hearing that he was not a United States citizen); United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior deportation order, the deportation hearing transcript, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphasis added).

The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d at 1449, admissions made during deportation hearings, see id., and transcripts, see Contreras, 63 F.3d at 858. In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which supported a defendant's § 1326 conviction:

> The prosecution also presented several documents from the prior deportation proceeding. During the deportation hearing, Sotelo admitted, through his lawyer, allegations in the order to show cause that he is not a citizen or national of the United States and he is a native and citizen of Mexico. The prosecution presented the order to show cause and an advisement of rights form, which Sotelo signed. The

advisement of rights form stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution presented the order of deportation and the warrant of deportation, evidencing Sotelo's actual deportation.

109 F.3d at 1449 (emphasis added).

### D. PHYSICAL REMOVAL

The Ninth Circuit has held that deportation "refers to the removal from the country of aliens who are physically present in the United States." United States v. Romo-Romo, 246 F.3d 1272, 1275-76 (9th Cir. 2001); see also United States v. Luna-Madellaga, 315 F.3d 1224, 1227 (9th Cir. 2003) ("Section 1326 speaks only of 'removal.'" . . . "It plainly turns on the alien's physical removal -- not the order of removal."). As a result, the United States need only prove beyond a reasonable doubt that Defendant physically left the country sometime between the time he was ordered deported and the time he was found in the United States. See United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (citation omitted). A warrant of deportation may be sufficient evidence of physical removal. Id.

### E. EXPRESS CONSENT

The Ninth Circuit has stated what is required for permission to reapply:

The INS has promulgated regulations that govern the process by which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. § 212.2. These regulations include the requirement that a deported alien must have remained out-side of the United States for a minimum of five consecutive years. Id. § 212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form I-212 to the INS to obtain consent of the Attorney General to reapply for admission. See United States v. Sanchez-Milam, 305 F.3d 310, 312-13 (5th Cir. 2002), cert. denied, 537 U.S. 1139, 154 L. Ed. 2d 834, 123 S. Ct. 932 (2003). Accordingly, the Attorney General did not "expressly consent[] to [Pina-Jaime's] reapplying for admission" as required by the statute. See 8 U.S.C. § 1326(a)(2).

United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003). There is no evidence supporting that Defendant has done so.

As a result, any cross-examination regarding the lack of permission is irrelevant. In United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005), the defendant sought to elicit testimony on cross-examination from a witness for the United States regarding the following claims: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian never checked with the other federal agencies to inquire about documents relating to the defendant. Judge Lorenz sustained objections to this line of cross-examination finding that it was irrelevant. Id. The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts of this case, because it is uncontested that [the defendant] never made any application to the INS or any other federal agency." Id.

As in Rodriguez, Defendant has not presented any evidence that he had applied for reentry. As in Rodriguez, any testimony from witnesses for the United States regarding the types of checks performed to show the lack of an application for reentry would be irrelevant.

There is a second reason this type of cross-examination is irrelevant. It is true that the Ninth Circuit's model jury instruction requires the United States to prove the defendant's lack of permission to re-enter the United States beyond a reasonable doubt. Ninth Circuit Manual of Model Jury Instructions – Criminal § 9.5; see United States v. Rivera-Relle, 333 F.3d 914, 919 (9th Cir. 2003); United States v. Mateo-Mendez, 215 F.3d 1039 (9th Cir. 2000). However, unlike a true "element," lack of permission to re-enter is more like an affirmative defense. The Fifth Circuit has stated,

> [I]t is unclear whether Attorney General consent is even an element of 8 U.S.C. § 1326 or only an affirmative defense. The "unless" language would seem to indicate that it is an exception and is therefore more in the nature of a defense which the defendant must establish.

United States v. Terrazas-Carrasco, 861 F.2d 93, 96 (5th Cir. 1988). The Supreme Court has never ruled on this question, but in United States v. Mendoza-Lopez, 481 U.S. 828, 830-31 (1987), the Court called the "consent" clause an "exception" to the statute. The Court described section 1326 as providing the following:

> "Any alien who–
> "(1) has been arrested and deported or excluded and deported, and thereafter
> "(2) enters, attempts to enter, or is at any time found in the United States
> . . .
> "shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not mor than two years, or by a fine of not more than $1,000, or both."

Id. at 830-31. In a footnote, the Supreme Court added that the "consent" clause was an "exception" to the statute:

> The statute excepts those aliens who have either received the express consent of the Attorney General to reapply for admission or who otherwise establish that they were not required to obtain such consent. 8 U.S.C. § 1326(2)(A), (B).

Mendoza-Lopez, 481 U.S. at 831, n.2. The Court was not presented with the issue of whether the "consent" clause is an element or an affirmative defense. However, the language suggests that it should more properly be treated as a defense, and not as an element at all. See United States v. Gravenmeir, 121 F.3d 526, 528 (9th Cir. 1997) (holding, in possession of a machine gun prosecution, that "the exceptions contained in part (2) of the subsection establish affirmative defenses to the defined offense."). We think that Congress intended it to be an affirmative defense. After all, a defendant is in a much better position than the United States to know whether he has sought or obtained permission to re-enter the United States. Thus, unless Defendant intends to assert an affirmative defense that he reapplied, this type of cross-examination about the search performed for permission to enter is not relevant.

### F.   LAWFULNESS OF PRIOR DEPORTATION

Since physical removal is all that is required, the lawfulness of a defendant's prior deportation is not an element of the offense under § 1326 and should not be presented to the jury. See United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc). The United States need only prove that a deportation proceeding actually occurred and that the defendant was consequently deported. United States v. Medina, 236 F.3d 1028, 1031 (9th Cir. 2001).

A deportation order or warrant is sufficient to establish the prior deportation. Id.; see also United States v. Bejar-Matrecios, 618 F.2d 81 (9th Cir. 1980) (holding a warrant of deportation is admissible as a Public Record, pursuant to F.R.E. 803(8)). A tape recording or transcript of the prior deportation is not required to prove the prior deportation. Medina, 236 F.3d at 1030-31. Furthermore, although a defendant charged pursuant to § 1326 can preclude the United States from relying on a prior deportation in which the proceedings were so procedurally flawed that it "effectively eliminated the right of the alien to obtain judicial review," the mere absence of a tape recording or transcript of the deportation proceeding does not establish that the deportation was "fundamentally unfair." See id. at 1031-32 (citations omitted). Finally, because a defendant must also prove prejudice as a result of a flawed deportation proceeding, a vague assertion that he might be able to locate some defect in the proceeding if a tape recording was available is "no more than speculation to support his assertion of prejudice," and insufficient to meet his burden. Id. at 1032 (quoting United States v. Corrales-Beltran, 192 F.3d 1311, 1318-19 (9th Cir. 1999)).

### G.   PRIOR CONVICTION

A prior felony conviction is not an element of § 1326(a) and should not be presented to the jury. See United States v. Alviso, 152 F.3d 1195, 1199 (9th Cir. 1998) (citing Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998)). The Supreme Court has indicated tangentially that the

Ninth Circuit's reasoning in Almendarez-Torres may have been incorrectly decided. See Apprendi v. New Jersey, 530 U.S. 466, 489-90 (2000); United States v. Nordby, 225 F.3d 1053, 1057 n.1 (9th Cir. 2000). The holding in Almendarez-Torres remains controlling law, however, until expressly overruled by the Supreme Court. See United States v. Pacheco-Zepeda, 234 F.3d 411, 414 (9th Cir. 2000), cert. denied, 532 U.S. 966 (2001).

**H.    DUPLICATES**

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under circumstances, it would be unfair to admit the duplicate instead of the original. See Fed. R. Evid. 1003.

IV

**WITNESSES**

The Government reserves the right to add, omit, substitute or change the order of witnesses. Presently, the Government intends to call the following witnesses during its case-in-chief:

1. Border Patrol Agent Russell Baisly
2. Senior Border Patrol Agent Sean Braud (A-File Custodian)
3. Immigration Enforcement Agent Robert Tarango
3. David Beers (Fingerprint Expert)

V

**EXHIBIT LIST**

The Government will provide a final exhibit list on the morning of trial. Presently, the Government intends to offer into evidence the following:

1. Pictures of Apprehension Area
2. Order of Immigration Judge (June 29, 2005)

3. Warrant of Removal/Deportation (Form I-205) (June 30, 2005 and July 2, 2005)

4. Certificate of Non-Existence of Record

5. Fingerprint Cards (January 6, 2008; July 16, 2008)

6. Certified Transcript of Plea Colloquy (February 11, 1998) (if no stipulation)

## VI

## PROPOSED VOIR DIRE

1. Of those of you who have sat on criminal juries, did any of those juries fail to reach a unanimous verdict?

2. Has anyone had an unpleasant experience with any law enforcement personnel?

3. Has anyone had any disputes with any agency of the United States Government?

4. Does anyone have relatives or close friends who have been investigated, arrested, accused or charged with a crime?

5. Does anyone have relatives or close friends who have been deported or removed?

6. Does anyone have strong feelings about the United States Border Patrol or any other federal agency involved in immigration issues?

7. Does anyone believe that immigration laws are too harsh?

8. Does anyone believe everyone should be allowed to enter the United States?

9. Does anyone believe that it should be legal to enter the United States without authorization?

10. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?

11. Does everyone understand that the laws of the United States equally apply to everyone who enters the United States?

12. Does everyone understand that as a juror you are not to consider prejudice, pity or sympathy in deciding whether the Defendant is guilty or not guilty?

13. Does anyone think that, regardless of the strength of the evidence, he or she will have trouble deciding whether the Defendant is guilty or not guilty?

14. Does anyone think he or she cannot decide whether a person is guilty or not guilty?

15. Does anyone have religious or moral beliefs which will make it difficult for he or she to make a decision strictly based on the law and facts of this case?

## VII

## **JURY INSTRUCTIONS**

The United States will submit proposed jury instructions under separate cover. The United States reserves the right to submit additional instructions at the Fed. R. Crim. P. 30 conference.

## VIII

## **OTHER LEGAL ISSUES**

All outstanding legal issues will be addressed prior to commencement of trial scheduled for July 22, 2008.

DATED: July 21, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Stewart M. Young*
STEWART M. YOUNG
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.08-CR-283 IEG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ENRIQUE AYON-CORTEZ, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

    I, STEWART M. YOUNG, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S TRIAL MEMORANDUM** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1. Sara Peloquin, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 21, 2008.

                                                             /s/ ***Stewart M. Young***
                                                             STEWART M. YOUNG
                                                             Assistant U.S. Attorney