KAREN P. HEWITT  
United States Attorney  
STEWART M. YOUNG  
Assistant U.S. Attorney  
California State Bar No. 239764  
United States Attorney's Office  
880 Front Street, Room 6293  
San Diego, California 92101-8893  
Telephone: (619) 557-6228/(619) 235-2757 (Fax)  
Email: stewart.young@usdoj.gov  
Attorneys for Plaintiff  
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08-CR-283 IEG |
|---|---|---|
| Plaintiff, | ) ) | DATE: July 14, 2008 |
| v. | ) ) ) | TIME: 2:00 p.m. Before Honorable Chief Judge Irma E. Gonzalez |
| ENRIQUE AYON-CORTEZ, | ) ) | RESPONSE TO DEFENDANT'S MOTION |
| Defendant. | ) ) ) | TO ADMIT EXPERT TOGETHER WITH STATEMENT OF |
|  | ) ) | FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |
|  | ) |  |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Stewart M. Young, Assistant U.S. Attorney, and hereby files its Response to the Motions in the above-referenced case. Said Response is based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

DATED: August 4, 2008.

    Respectfully submitted,

    KAREN P. HEWITT  
    United States Attorney

    s/ Stewart M. Young  
    STEWART M. YOUNG  
    Assistant United States Attorney

KAREN P. HEWITT
United States Attorney
Stewart M. Young
Assistant U.S. Attorney
California State Bar No. 234889
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6228/(619) 235-2757 (Fax)
Email: stewart.young@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br><br>          v.<br><br>ENRIQUE AYON-CORTEZ,<br><br>                             Defendant. | Criminal Case 08-CR-283 IEG<br><br>DATE:     August 15, 2008<br>TIME:     2:00 p.m.<br>Before Honorable Chief Judge Irma E. Gonzalez<br><br>UNITED STATES' STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

**I**

**STATEMENT OF THE CASE AND STATEMENT OF FACTS**

The United States incorporates its previously filed motions in limine in its statement of the case and the statement of facts.

The Court set trial for July 22, 2008, at 9:00 a.m. On July 21, 2008, at approximately 12:30 p.m., defense counsel called undersigned counsel and stated that Defendant would be calling a defense expert and wanted to provide proper notice of that expert. Defendant then set a status before the Court that day to allow for a continuance to provide the proper notice to the Government as to Defendant's proffered expert. As of this date, Defendant has provided notice through a briefing to the Court that she intends to call Dr. Jacqueline Stevens to testify to a "study that she conducted where she documented the cases of thirty-one United States citizens held in immigration custody for between one month and five years." Def's Briefing Regarding Relevance of Proposed Testimony at 2.

## II

## **MEMORANDUM OF POINTS AND AUTHORITIES**

The United States agrees with several points made by Defendant in his briefing. As stated in Defendant's brief, any and every defendant has the right to present a complete defense. Such a right is predicated, however, on presenting both relevant and credible evidence before the jury. Indeed, any evidence brought before the jury must meet the standards of the Federal Rules of Evidence.

At issue in this case is the Defendant's proposed expert, Dr. Jacqueline Stevens. Dr. Stevens is an Associate Professor at University of California, Santa Barbara ("UCSB"). She teaches in the Law and Society Program at UCSB, and has published in certain areas of this cross-sectional program. She has also taught at Pomona College, the New School for Social Research, and University of Michigan, with a stint as a Health Policy Scholar at Yale University. She received both her Masters and her Ph.D. in Political Science from University of California, Berkeley. Her research interests appear to range a wide gamut from "Sigmund Freud and International Law" to "On the Morals of Genealogy" to "Biotech Patronage and Making of Homo DNA." Her UCSB profile on her website states that she

> writes about how laws create hereditary membership groups that seem to be natural. Her focus is on the role law plays in constituting the nation, ethnicity, race, family, kinship, and sexuality. These groups inspire passionate attachments causing systemic violence and inequality, seen especially in crises of war, restrictions of movement among states, inheritance, marriage, and private ownership of land. Stevens also writes about the role of government research in constituting taxonomies of race and ethnicity through the research done on the Human Genome Project.[1]

Federal Rules of Evidence 702 allows the admission of expert testimony where it will assist the jury in understanding the evidence or determining a fact in contention. "Jurors will only be assisted by: (1) a qualified expert; (2) testifying about a proper subject; (3) in conformity with a generally accepted explanatory theory; (4) with more probative value than prejudicial effect." United States v. Rahm, 993 F.2d 1405, 1409 (9th Cir. 1993).

---

[1] See http://www.lawso.ucsb.edu/people.php#Stevens (last viewed August 1, 2008).

1   As the Court is intimately aware, the elements of a 8 U.S.C. § 1326 prosecution include:

2   1.   Defendant was deported from the United States;

3   2.   After deportation, Defendant voluntarily entered the United States;

4   3.   When Defendant entered he knew he was entering the United States or after the defendant entered the United States he knew that he was in the United States and knowingly remained;

6   4.   Defendant was found in the United States without having obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and

8   5.   Defendant was an alien at the time of the defendant's entry into the United States.

See 9th Cir. Model Crim. Jury Instructions 9.5B (2007); see also United States v. Salazar-Gonzalez, 458 F.3d 851, 856 (9th Cir. 2006).[2/] In order for Defendant's expert to testify, that expert must be able to provide testimony that is relevant to these elements, or to provide a defense to one of these elements. Although it is slightly unclear exactly how Dr. Stevens' testimony relate to this case, it appears that Defendant's expert will testify as to speculation regarding Defendant's alienage, which would be the final element of a 1326 prosecution.

Defendant states that Dr. Stevens will testify regarding "her research into the number of United States citizens held in immigration custody for at least one month in deportation proceedings." Def's Brief at 2. According to Defendant's proffer, Dr. Stevens will testify as to deportation proceedings conducted by Immigration and Customs Enforcement (ICE) and "will opine that admissions regarding alienage in deportation and criminal proceedings are tainted by the coercive prospect of lengthy or indefinite custody making statements of alienage in this context less reliable because detainees are faced with the choice of their citizenship or their liberty." Id.

Such testimony appears to be based on research conducted by Dr. Stevens, which has not yet been provided to the Government. The Government has viewed the article written by Dr. Stevens in The Nation, which purportedly discusses Dr. Stevens' interviews with seven private

---

[2/]   The Government will request a special verdict form indicating that the Defendant was removed subsequent to June 21, 2004. See United States v. Jose Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006).

4

immigration attorneys.[3] According to Dr. Stevens' article, she left messages with fifteen private immigration attorneys, seven of which returned her phone call. Of those seven attorneys, as well as from attorneys at three nonprofit immigration clinics (not named in the article), she "documented thirty-one cases across the country" resulting in fourteen people being deported and five remaining in detention. If this is the bulk of Dr. Stevens' research, the Government contends that such an expert opinion should be excluded *in toto*. Indeed, such anecdotal research and findings by Dr. Stevens has no relevance to the elements of 8 U.S.C. § 1326, nor is it reliable.

If Defendant contends that he is, in fact, a United States citizen, the Government is unsure how Defendant will be able to provide such a contention to the jury short of Defendant's own testimony (or, as in United States v. Bahena-Cardenas, 411 F.3d 1067 (9th Cir. 2005), through defendant's mother's testimony). Indeed, the Government believed that the Court would not allow self-serving hearsay, but also explicitly requests that the Court not allow self-serving hearsay to be provided in the Defendant's case.[4] During the motion hearing, Defendant intimated that Defendant had, in the past, held himself out to be a United States citizen. Such statements, if offered by anyone other than Defendant himself, should not be allowed to be presented during Defendant's case, as they will undoubtedly be self-serving hearsay.[5]

Accordingly, it appears that Defendant will seek to introduce Dr. Stevens' testimony in relation to these assertions that Defendant has, in the past, held himself out to be a United States citizen, but that he either purposefully or mistakenly agreed to be deported because he did not want to stay in ICE (or federal) custody. Of course, the United States bears the burden of proving that

---

[3] See "Thin ICE," The Nation, available at http://www.thenation.com/doc/20080623/stevens (last viewed Aug. 1, 2008), attached to this filing as Appendix A.

[4] Under Fed. R. Evid. 801(d)(2), a statement of a party is not hearsay only when it is being offered against the party—not when it is being offered on his behalf. See United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

[5] See United States v. Navarro-Vareles, 551 F.2d 1331, 1334 (9th Cir. 1976) (holding that the defendant could not admit self-serving hearsay under Fed. R. Evid. 801(d)(1)(B)); United States v. Emmert, 829 F.2d 805 (9th Cir. 1987) (holding that defendant's own out-of-court statements would not be admissible through defendant under Fed. R. Evid. 803(3)).

5

1  Defendant is an alien at the time he committed the offense of coming back into the United States. But Defendant may not try to muddy up the waters by introducing wholly irrelevant testimony by its expert that "sometimes, United States citizens are deported" and that "sometimes, these United States citizens make admissions during deportation hearings that are untruthful."

On an additional note, Defendant states that Defendant's admissions during federal criminal proceedings are also suspect due to Dr. Stevens' research, but there is no indication that Dr. Stevens has conducted any research into federal criminal proceedings. Rather, according to her own article and that proffer by Defendant, it appears that Dr. Stevens' research rested solely in the realm of ICE activities (not federal criminal hearings). Dr. Stevens' research apparently concludes that, sometimes, people make admissions so that they can get out of ICE deportation custody quickly. It also appears, at least according to her article in The Nation, that she conducted research on those who are derivative citizens, or who agree to voluntary return, rather than solely on actual deportation proceedings of people convicted of criminal activities in the United States. [See Appendix A.] Neither derivative citizenship nor voluntary removal are at issue here, at least based on the lack of any discovery produced to the Government at this time. If Defendant desires to make a derivative citizenship claim during the trial, the United States requests that Defendant appropriately file the N-600 determination with ICE, or concede that Defendant has waived such a claim as to this current criminal proceeding.

A trial court has broad discretion to admit or exclude expert testimony, and its decision will be reviewed with "considerable deference." United States v. Cordoba, 194 F.3d 1053 (9th Cir. 1999); United States v. Aguon, 851 F.2d 1158, 1171 (9th Cir. 1988). The Court should exclude the proposed testimony on several grounds. First, a jury of southern California residents is already well-equipped without expert assistance to weigh Defendant's testimony, if there is any, that he purposefully lied to immigration judges (on several occasions) and federal judges (on several occasions) in order to leave ICE custody earlier than expected. To have an expert to testify to an assertion that "sometimes people make admissions to get out of ICE custody" is not a proper subject for consideration by the jury from an expert, nor does it appear more probative than prejudicial to survive admission under Fed. R. Evid. 403. Indeed, it is fair to say that, if this is

6

1   Defendant's theory of the case, then a jury should be well aware that sometimes people lie to get
2   out of situations or to get out of taking responsibility for their actions.  No expert testimony is
3   needed on such a basis.

4       Second, Dr. Stevens apparently is prepared to testify that, in the cases of some people based
5   on her research, several United States citizens have been deported.  At least according to the
6   documents procured by the Government (since Defendant has not provided any of Dr. Stevens'
7   research in completed form, nor the actual research upon which she relies), it appears that Dr.
8   Stevens interviewed approximately seven defense counsel and relied on some anecdotes from
9   unnamed non-profit immigration clinics.  The expert nature of any such testimony would be
10  unreliable.  See Jinro Am., Inc., v. Secure Investments Inc., 266 F.3d 993, 1006, 1009-1010 (9th
11  Cir. 2001).  Indeed, such a small sample size appears to be highly suspect, unlike a generally large
12  sample study that is usually required of an expert on such academic matters.

13      In any event, even assuming arguendo that Dr. Stevens' testimony might assist the jury in
14  some way, its prejudicial effects substantially outweighs whatever negligible probative value that
15  it possesses.  United States v. Hoac, 990 F.2d 1099, 1103 (9th Cir. 1993) ("Otherwise admissible
16  expert testimony may be excluded under Fed. R. Evid. 403 if its probative value is substantially
17  outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay.").  Dr.
18  Stevens' testimony will not provide the jury with helpful information regarding *this* Defendant,
19  but rather will provide information regarding the clients of several attorneys whom she
20  interviewed.  Such testimony has no relevance to this specific case, as it is uncertain how many
21  defendants she interviewed that had numerous deportation hearings and numerous criminal
22  proceedings under oath before both immigration judges and federal district judges. Additionally,
23  it appears from the article that Dr. Stevens interviewed immigration counsel (at least for the most
24  part), rather than the deportees or the defendants themselves, which makes any reliability of the
25  study suspect.  Indeed, Dr. Stevens might be able to opine that she has talked to numerous
26  immigration attorneys, and they believe that their clients lied to get out of custody, but that is not
27  the same as a study during which she talks to numerous clients, and they tell her that they lied to
28

7

1  get out of ICE custody. Such a difference is germane and relevant, and therefore would not be
2  proper to be considered by the jury.

3  Looking to relevant Ninth Circuit precedent, the Government believes that Dr. Stevens'
4  testimony should not be allowed for this trial. In United States v. Casteneda, 94 F.3d 592, 595-96
5  (9th Cir. 1996), the panel affirmed a trial court's exclusion of a cultural expert in a drug trafficking
6  trial. Casteneda sought to introduce an expert familiar with the plight of migrant workers to
7  "explain his flight from police." Id. at 595-96. The panel determined that the Court did not abuse
8  its discretion by excluding the expert from testifying on such an issue, because the "testimony was
9  not one that needed illumination by an expert." Id. Indeed, the panel noted that the "jury was
10 capable of assessing Casteneda's fear of apprehension by the Government." In this case,
11 Defendant seeks to have Dr. Stevens essentially testify as to Defendant's fear of a lengthy time
12 spent in ICE custody, which is not anywhere on the record. As in Casteneda, Defendant's
13 proffered expert should not be allowed to testify regarding the proffered issues.

14 In United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005), Rodriguez-
15 Rodriguez sought to include expert testimony that "the symptoms of heroin withdrawal could have
16 precluded his ability to voluntarily waive his rights under *Miranda*." The trial court excluded this
17 testimony because it was irrelevant, because "the expert's testimony was general and did not relate
18 to any conduct that was observed on the date of" Rodriguez-Rodriguez's arrest. Id. As in that
19 case, any expert testimony by Dr. Stevens would be "general" and would "not relate to any conduct
20 that was observed on" any date during which Defendant appeared either before an immigration
21 judge or a federal judge in any of his deportation or plea hearings. Again, any suggestion by Dr.
22 Stevens as to what Defendant has done in the past during ICE and federal criminal hearings is pure
23 speculation, and no expert can opine as to what he has done in the past at any of these hearings.
24 Accordingly, this expert testimony should not be allowed during trial.

25 In United States v. Bahena-Cardenas, 411 F.3d 1067, 1078-79 (9th Cir. 2005), the panel
26 affirmed a district court's exclusion of an expert witness's testimony. In that case, defense
27 provided an "expert in Mexican transborder culture" who testified to a small-scale study that she
28 conducted in Mexico. According to this expert, a small percentage of people within the sample

1  that she surveyed reported lying to Mexican officials in order to get Mexican birth certificates. Id. In that case, the district court found that the sample size (of 56 people surveyed) was too small, and it did not involve practices relating to the actual state where Bahena-Cardenas resided. Id. The panel noted that, based on the small scale of the study, "[g]eneralizing from this scant evidence to reach conclusions in this particular case could encourage jurors to resort to cultural stereotypes." Id. While the Government is unsure of Dr. Stevens' precise testimony and research, based on the scant proffer provided in Defendant's brief, the Government believes that any generalizations by Dr. Stevens might encourage jurors to resort to cultural stereotypes akin to Bahena-Cardenas. Additionally, while the Government has yet to view the research provided by Dr. Stevens, it is clear that a baseline of interviews with seven defense counsel (of the fifteen that Dr. Stevens reported that she left messages with) and some unnamed nonprofit immigration clinics (her research does not include how many attorneys she talked to at these clinics) does not an effective research endeavor make. [See Appendix A.] If a survey of 56 people appears to be suspect, clearly a discussion with seven defense counsel (and some apparent, but uncredited, information from unnamed nonprofit immigration clinics) cannot form the basis for an expert opinion as to the deportation procedures of ICE.

The Court should exclude Dr. Stevens' testimony. Dr. Stevens has no knowledge regarding the specific circumstances of Defendant's admissions in both immigration proceedings and criminal proceedings, and could therefore not opine as to the legitimacy (or lack thereof) of those admissions. Her own research, of a limited number of people, indicates that a few would lie regarding their citizenship during immigration proceedings. As set forth above, the only testimony she could possibly provide regards the frequency of such false statements apparently made by United States citizens, among the small sample size that she interviewed (according to the only information available to the Government at this time). Such testimony is both irrelevant, and frankly, inapplicable to Defendant's actual case. Such testimony does not rise to the level of expert testimony that will be helpful to the jury in this case and should be excluded.

//
//

# III

# **CONCLUSION**

For the foregoing reasons, the United States respectfully submits that this proposed expert testimony is both irrelevant and not proper to this proceeding. The United States requests that the Court deny Defendant's motion for this expert to testify.

**DATED:** August 4, 2008.

                                          Respectfully submitted,

                                          KAREN P. HEWITT
                                          United States Attorney

                                          s/ Stewart M. Young
                                          STEWART M. YOUNG
                                          Assistant United States Attorney

|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| SOUTHERN DISTRICT OF CALIFORNIA | |

| UNITED STATES OF AMERICA, | Case No. 08-CR-283 IEG |
|---|---|
| Plaintiff | |
| v. | CERTIFICATE OF SERVICE |
| ENRIQUE AYON-CORTEZ, | |
| Defendant. | |

IT IS HEREBY CERTIFIED THAT:

I, JOSEPH J.M. ORABONA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **United States' Response to Defendant's Briefing Regarding Relevance of Proposed Expert** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

Sara Peloquin, Esq.
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101
Tel: (619) 234-8467
Fax: (619) 234-2666
Email: sara_peloquin@fd.org
*Lead Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 4, 2008.

s/ Joseph J.M. Orabona
JOSEPH J.M. ORABONA
Assistant United States Attorney